Move to our fourth argument of the morning in Appeal No. 22-1304, Ambassador Animal Hospital v. Elanco Animal Health. Mr. Bach, good morning, whenever you're ready. Good morning, Your Honor. No, that's all right. Good morning, Your Honors. Philip Bach for the Plaintiff. I've reserved four minutes for rebuttal. The District Court erred by dismissing this action because plaintiff plausibly alleges that the faxes were sent to veterinarians to attend free dinner seminars were unsolicited advertisements within the definition of the TCPA. Congress intended the TCPA would prohibit unsolicited advertising by fax in physicians This Court noted that the TCPA is a remedial statute and it must be liberally construed in favor of consumer protection. The definition here is the definition of unsolicited advertisement is any material advertising the commercial availability or quality of any property, goods, or services. In the Holtzman v. Terza case, this Court construed that definition and noted that the content requirement is minimal. It's any content, any material that's advertising. And then the Court ruled that context shows whether it was advertising. And the context there led the Court to conclude that promotion or marketing was the reason the faxes were transmitted. Mr. Bach, in a case like this, whether you're going to talk about it being a form of indirect advertising or I'm not crazy about this word pretext, but if we want to insist on using it and we use it, what's the test? So let's assume that you prevail and one of us is drafting an opinion. How do you recommend we articulate the test? So we'll type out the definition, quote, unquote, and then how do we articulate the test? The test for plaintiff to win? No, no, no. The test for measuring what is an unsolicited advertisement. Well, it would be a totality of the circumstances. Right. What's the substance of it? Any material that is advertising availability or quality of commercially available property, goods, or services. But we ordinarily don't articulate a test by just repeating a statutory definition, right? That's what you just did. You just paraphrased it. All right, let's see. The reason I'm asking that, I'll tell you why, is because your Coca-Cola example in Okay. Okay, and the reason that that throws me off is I think how in the world does that fit the statutory definition? And the way I understand your hypothetical is assume that the Juul grocery store chain fax machine goes off with a fax from Coca-Cola and the fax is nothing more than the Coca-Cola logo. That is it. Yes. How does that fit the statutory definition? And what that raises in my mind is what test or how do you, what's the principle in which that hypothetical fits the statute? It's looking for a commercial purpose, commercial advertising purpose. The Coca-Cola, so like here, the Elanco is a registered trademark of Eli Lilly and that's an advertisement. Now, it's not an advertisement in every context. But okay, so the Coca-Cola fax though, it has to advertise the commercial availability or quality, we can just say of Coca-Cola products, right? Yeah. How does the logo itself does that? Yeah, it does. It's a trademarked logo so that only that company can sell those products with that name. And so the name is synonymous with the products. Then it's more about the context in which the logo appears. And you don't worry that that empties the definition of limitations that are inherent in the language that Congress used? I don't see the language as narrow. Advertising the commercial availability or quality. The only way that I can see that that fits is you would say there's no way that Coca-Cola is going to send a fax to Juul if Coke is no longer selling Coke products. It's not going to engage in just commercial futility. Right, Coca-Cola shuts down, for example. They're not going to send faxes after they shut their business down. Right, I mean, is that your point? Well, I don't know why Coca-Cola would send those, but if the example was Coca-Cola... Well, that's the example you offered, not me. Well, that they sent it to a grocery store? Well, or they sent it to somebody. I mean, other than Walmart, they sent it to Walmart. I don't know why they would, but the Goodyear blimp is advertising tires to people who know what Goodyear is. People who don't know what it is, they would just think that it's some guy named Goodyear or something. But people who know their Goodyear tires know now Goodyear is still in business, has enough money to pay for a blimp to fly around a football game. It's reminding you of Goodyear tires and their availability and their quality. And the less known... If I'm advertising something and nobody knows me and knows what I'm selling, I have to give a lot more words and descriptions than... Let me ask you this. Let's assume that Pfizer, okay, in September of 2021, one month after the vaccine was approved, okay, let's suppose that it sends out to all hospitals and infectious disease doctors a fax, and the fax says the following. We're offering a free webinar tomorrow at 3 p.m. on preventing and treating COVID patients who are allergic to vaccines. I think if I file the lawsuit, they would say that they have a First Amendment right to say that. Forget the First Amendment. Okay. Does it fit the statutory definition? Is it about a vaccine that's for sale? Treating COVID... It says show up at Bucca di Beppo, okay, or go on to the webinar, whatever you want. Okay. And our seminar is about preventing and treating COVID in patients allergic to vaccines. Okay. And who did they send that to? All hospitals in the United States and all infectious disease experts and doctors. And so, yes, that would fit the definition of an advertisement under the statute. How? Because it contains material about Pfizer and what they're selling, and, you know, it doesn't have to hit you over the head to tell you that it's about something that's available and that it has a quality of goodness or preventing... So what that risks then... Okay. All right. So if that's your position, what that risks is that that Coca-Cola fax hypothetical goes to summary judgment 100% of the time because of commercial... It should happen. It should, yeah. If Coke sends 5,000 faxes with just their logo, why should that case not be filed? What were they doing? That's why they sent it. It could be an accident or something. I don't know. It might have an excuse, but... Right. But you agree it's a statutory case. Yeah. I mean, the statute was written to regulate commercial speech, so it can't... You know, the First Amendment says you can't regulate speech. Then the court said you can regulate commercial speech. This is commercial speech. They said what they're trying to do is prevent unsolicited fax advertising, not unsolicited fax advertising of a particular product name or something. You know, it doesn't say name or price even. The statute doesn't say the price would be in an advertisement, even though that's... I'm sorry, Erin. I'm surprised you haven't mentioned this 2006 FCC order because you're being asked what's the test, what's the definition. Here we have a suggestion by the FCC of what would be the definitional hook in this case. It's a free seminar. Free seminar is our advertisement, says the FCC. What's your take on whether we really ought to be asking did the district court apply some sort of deference, make a deference finding about whether it should or not? That's something I'm struggling with here. What do you make of what the district court did here, particularly footnote one of her opinion? You know, did she conduct some sort of quick and fast deference analysis and say the outcome is the same either way? Or did she not? Should we be remanding for her to do that? Why isn't that something you're interested in? Well, yeah, I mean, the standard... We say we've alleged enough to plead a claim and she shouldn't have dismissed the claim under 12B6 for failing to state a claim. That's just Iqbal. She looked at the invitation and said that it was more likely than not that that's lawful conduct under Iqbal. That's when you can dismiss a case based on the pleadings because it's impossible for this to have been an advertisement that fits the definition under the statute that says don't send advertisements by fax unless you get permission. So in your view, she didn't consider the FCC's order at all and how it defines free seminars to include advertising? Yeah, I don't know that she gave deference to the FCC, but I don't know that the FCC... Maybe the FCC says all invitations to free seminars are advertisements and maybe it doesn't, but I think what they're saying is that it makes sense. Why does somebody give free stuff to somebody? Elanco is... Why are they inviting a list of veterinarians to go to a seminar to get free food and free education credits and telling them to RSVP by registering with salespeople? And at the bottom, there's something that says if you're a Minnesota veterinarian or work for the government, you might not be able to accept free stuff from industry people, so you can't get free food, drinks, and educational items, they say. So why are they doing this? And wouldn't that... That's what Holtzman versus Terza said is why was he doing it? Now, he sent interesting information, but that was kind of a pretext, if you will, for advertising. He was reaching out. Now, here they send even more interesting information. Not only is it interesting, it's free food and free CLE credits or CE credits, and it's from a company and a trademark name that is synonymous with veterinary products. Veterinarians would know. They sent it to veterinarians, so they knew who they were sending it to. And it's on this template, and it's just an anonymous invitation. Okay, we'll give you some time in rebuttal. Okay, thank you. Thank you, Mr. Bach. Mr. King, good morning. Good morning, Your Honors. May it please the Court, Kevin King for the appellees. Judge Scudder, I'd like to start with your question about what is the test, and then work back from there to some of the other things the Court was discussing with Mr. Bach. The TCPA regulates the sending of unsolicited advertisements to fax machines, material that advertises the commercial availability or quality of property, goods, or services. And that statutory language contains three key limitations that work together to show that it's narrower than what plaintiff's giving credit for here. The statute does not, contrary to what Mr. Bach just said, regulate advertising in the abstract. Instead, it regulates a more specific kind of advertising. And specifically, first, the statute tells us that the fax needs to advertise goods or services to them to promote their sale. You can get that from the dictionary definitions on page 17 of our brief, or you can look to cases like the Third Circuit's Optum decision that adopts exactly that definition. Second, per this Court's decision in Terza, the fax needs to plug the commercial availability or quality of those goods and services, where you can buy them, or why they're worth buying. It's got to be one of the two. Third, per Section 227b1c of the statute, the advertisement needs to be sent to a fax machine, meaning that the advertising needs to appear on the face of the fax itself. You can't go out and draw that advertising from some other source, such as a later discussion at a seminar. The point here on this third one is that the advertising needs to go through the fax machine to count under the statutory definition. So when you put those three things together, Judge Scudder, you get a test. You get a test that says this statute's not looking to all advertising or even all unsolicited advertising. It's looking for a very specific type, that which promotes the sale of the defendant's goods and services. But what you're saying would make sense to me, but I struggle because we have this notion of skid more deference. You're saying the statute's not ambiguous. It's not ambiguous. But then we also have this agency interpretation. And what is the district court's obligation? And did she meet it here? What's your view about whether she considered how the agency is actually now subsequently saying a piece of paper offering a free seminar is an advertisement? And so I want to ask you the same question I asked Mr. Bach. What's your take of what the district court did with this particular piece of information? Yeah. My understanding, Your Honor, is that the judge looked at the statute and found that it's clear. And that's the same approach that a number of cases, whether you look at the PDR network decision on remand in the district court, the Pulse 8 decision from the District of Maryland, the Millennium Health case from the Eastern District of Pennsylvania, or the Third Circuit in Optum. Cases that apply the test from the Supreme Court and PDR network have almost universally come out and said that that 2006 FCC discussion, I'm not really sure quite what to call it, is not binding, is not persuasive because it does not engage with the statutory text. It does not discuss evidence or provide any kind of meaningful reasoning. But she doesn't actually say that. You look at footnote one. It's very, very short. She says, plaintiffs have made this argument I should give deference to this order. The outcome is the same either way. Full stop. Do we really have enough meat there to understand what the district court's analysis was there? Your Honor, I think you certainly do. And there are several reasons for that. One, this court in Terza had already declined to defer or give any weight at all to another part, a very closely related part of that very same FCC order. So this court's precedent had already said, look, this FCC order is not going to be controlling. But beyond that, the Supreme Court had said, look, there are reasons why this isn't going to be controlling. And the Fourth Circuit looked at that on remand and PDR network. And it said, and the United States, by the way, in its amicus brief, agreed. That 2006 order's discussion about unsolicited faxes, about this free seminars, that that's not controlling. It's at most an interpreter. Before all those conclusions were made, the Fourth Circuit remanded to the district court in that case. This is, we're talking about the same case, to conduct a deference analysis. It did. There's no reason this court, if you're interested in squaring up to that issue, that this court can't do exactly what the district court and PDR network did on remand and say this FCC order is entitled to no weight whatsoever. Pulse 8 decision, Millennium Health, and the list goes on from there. So I think really, you know, what we're focusing on here is a test that's prescribed by the statute. And the FCC order is maybe talking about, as in Terza, the commission's enforcement priorities, perhaps. It's a little bit unclear. But Terza says, you know, there's a discussion in this order, and then there's the CFR provisions, which are binding. This discussion is not in the CFR provisions. So I think when you're looking at this court's precedent, Your Honors, what you're seeing is the 2006 order is not really going to make a difference here. And so I guess if I could just come back to, you know, what we understand to be the correct test under the statute, it's those three things I was talking about, promoting the availability of the good or service, plugging its commercial availability, and making sure that the advertising you're looking at is on the face of the facts. When you do that here, we would submit that the judgment should be affirmed. Let me, the notion of how this statutory definition deals with indirect forms of advertising, I really don't like this word pretext at all. I think it's more confusing, and it is helpful to the law here. So I think these indirect, I was given, Mr. Bach, you know, these hypothetical examples. So suppose we edit the example, the osteoarthritis example here, the facts. And it's edited to say, come to the seminar, you're invited to the seminar, and what's the topic of the seminar? Effective medications for managing osteoarthritis. How's that come out? I think that comes out exactly the same way as this case did, Your Honor, because that facts doesn't mention the defendant's goods or services. It doesn't attempt to use the words of Optum from the Third Circuit to, you know, propose a transaction with the recipient. You know, it may be advertising in some sort of general sense, but it's not the kind of advertising that this statute targets. Okay. I would add, of course, that that's not the facts that we're dealing with. No, no, no. I get that. I know. So if we just switch that around a little bit, and you take that Pfizer hypo, and you modify that, and you say effective vaccines, you know, for preventing, you know, or managing COVID, I don't think you, would you say at that point, it still doesn't fit the statutory definition because it doesn't mention BioNTech? It doesn't show the products. It doesn't mention the products. It doesn't do what the statute says it needs to do, which is to promote the commercial availability of those products, goods, and services. But I guess there's another piece that's lurking behind those questions, and that Mr. Bach got to, and I want to make sure I address. He's falling back consistently on commercial purpose. We know from the statutory context that commercial purpose cannot be enough. If you look at Section 227A-4, the provision that deals with telemarketing calls, it keys liability to the caller's purpose, the purpose of the calls. The facts provision… I think that's a fair point, but, okay, let's set the purpose word aside, okay? What if you say, it can, though, account for the commercial context in which the recipient receives the facts? It's not purpose, like in, you know, where we're just drifting around talking about intent or something, on the sender's part. It's focused on the recipient, not the sender. And you say, we're going to take a recipient and assume objectivity, and the recipients are infectious disease doctors or they're veterinarians or something. And so when they see Elanco or they see Pfizer, they know, they're drawing upon, you know, their knowledge to connect a dot that they're going to see is like a centimeter apart. Well, Your Honor, two responses to that. First off, the statute in Part D, it says the sender has to include its name and its contact information on the facts. So this notion that Mr. Bach referred to about reminding the recipient of the defendant's products and services, that can't possibly be enough. And some of the judges on the Third Circuit, when they recently heard oral argument in the Millennium Health case, they pointed this out if you listened to that recording. But beyond that, the courts have said in national imaging, in the Fowlman case from the Northern District of Illinois, within this circuit and elsewhere, that the special knowledge on the part of the recipient, that's not part of the analysis. So I think you're right, Your Honor, it's an objective recipient test. It's not this particular recipient and what they know. And I think that's really a key point there. You heard from Mr. Bach, his test would make it so that if you just send your logo, that that's enough. And that shows that that goes too far, precisely the concern the court was looking at in Optum and precisely the concern that led them to draw a narrower test. You know, the liability in these cases can be massive. And if you adopt that capacious an approach, you make it so that companies can't do things like engage with their community. They can't do the kind of program, Your Honor, you were talking about with Pfizer and engage with the community that they're a part of, lest they risk crushing TCPA liability here. So I think there's a real problem with the way, the sort of unbounded way that the plaintiff is going at this statute here. If I could just emphasize, I see my time is about up. The faxes here invited recipients to a free program that's certified to provide continuing education credit under Illinois law. It doesn't mention the defendant's products and services. It doesn't show them. It doesn't say anything about them at all. Instead, it refers to general topics of veterinary practice. That shows that it falls beyond the statute's carefully calibrated scope. Thank you, Your Honors. We would ask that the judgment be affirmed. Okay, very well. Mr. Bach? Quickly, Your Honor, the defendant's argument doesn't leave any room for indirect advertising. All there can be is advertising that specifically hits you over the head with the name and price, and the statute doesn't suggest that. It's broader than that, and the definition is broad in other contexts. It means commercial speech. He said that this would prevent Elanco from reaching out, but we don't know Elanco was reaching out. All we know is that they were paying for the free seminar. They invited everybody. They paid for the food. They paid for the speaker. They paid so the CE credits would be issued. There's no evidence that they were there reaching out to anybody. Now, when they were reaching out to them with an offer of free stuff, it was about something relevant to what they sell. They probably deducted it as a marketing advertising expense. There is no other give people free stuff expense for corporations unless it was charity. This isn't charity. The purpose idea, advertising, is an action, so actions have purpose. So the fact that they talk about a purpose in another part of the statute, when they say any material advertising, the question is, is advertising doing what is it? Advertising is doing something. It's an action, so there's a purpose behind an action. You brought up an example of Coca-Cola faxing advertising to Juul, but this court has an opinion where it ruled on Juul publishing an ad of Michael Jordan, and they said that was just because they were congratulating Michael Jordan, and this court said, no, no, that's advertising. Okay, very well. We appreciate the advocacy of both sides. We'll take the case under advisement.